**DAVID J. HOLDSWORTH (4052)**
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| KIMBERLY S. GARCIA, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | Case: 2:24−cv−00653 |
| v. | : | Assigned To : Oberg, Daphne A. |
| | : | Assign. Date : 9/5/2024 |
| UNIVERSITY OF UTAH, | : Civil No. | Description: Garcia v. University of Utah |
| | : | |
| Defendant. | : Hon. | |

COMES NOW the Plaintiff, Kimberly S. Garcia (hereinafter referred to as "Ms. Garcia" or "Plaintiff"), complains of the Defendant University of Utah (hereinafter referred to as the "University of Utah" or "Defendant"), demands trial by jury, and as and for causes of action alleges as follows:

**JURISDICTION**

1.       This action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act" or "VRA"), as amended, for failure to accommodate a disability,

and for discrimination on the basis of disability, and for retaliation.  Jurisdiction is

specifically conferred on this Court by 42 U.S.C. § 2000 e (5).  Equitable and other

relief are also sought under 42 U.S.C. § 2000 e (5) (g).  Jurisdiction is also based on 28

U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

## PARTIES

2.      Kimberly S. Garcia is a citizen of the United States and a resident

of the State of Utah.

3.      The University of Utah is a political subdivision of the State of

Utah which does business in the State of Utah in Salt Lake County and which is an

"employer" subject to the terms and provisions of Title VII, and/or the Rehabilitation

Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Plaintiff alleges that, in June 2019, Defendant hired her to work as

an associate professor in the College of Nursing ("CON").  Ms. Garcia's credentials

are as follows: RN, DNP, FACNM, CNM, WHNP.

5.      As alleged in more detail below, on February 15, 2023, Marla

DeJong ("DeJong"), the Dean of the College of Nursing and the Chair of the Division

of Health System and Community Based Care, notified Ms. Garcia that the University

of Utah was not going to renew her contract of employment at the end of June 2023.

Thereafter, Ms. Garcia worked hard to persuade the CON to reconsider its decision and to renew her contract of employment. The CON did not make a decision as to whether it was going to renew or not renew her contract of employment until July 1, 2023.

6.     On July 1, 2023, the University of Utah did not renew Ms. Garcia's contract of employment.

7.     On or about June 28, 2023, Ms. Garcia filed an Intake Questionnaire with the Utah Antidiscrimination and Labor Division ("UALD"). By so doing, Ms. Garcia signified her intent to file a Charge of Discrimination with the State fair employment practices agency and the U.S. Equal Employment Opportunity Commission ("EEOC") containing allegations of discrimination and retaliation.

8.     On September 6, 2023, the UALD prepared a Charge of Discrimination for Ms. Garcia and emailed it to Ms. Garcia.

9.     On September 6, 2023, Ms. Garcia signed said Charge.

10.    On February 23, 2024, the UALD transferred Ms. Garcia's case to the EEOC and sent a letter to Ms. Garcia informing her of such transfer. The UALD letter received by Ms. Garcia did not give any reason for the transfer.

11.    On June 13, 2024, the EEOC issued Ms. Garcia a Notice of Right to Sue letter.

12.    Ms. Garcia is filing the instant civil action within 90 days of receipt of such Notice of Right to Sue letter.

## STATEMENT OF FACTS

13.    As alleged above, Plaintiff alleges that, in June 2019, Defendant hired her as an associate professor in the College of Nursing ("CON").

14.    Plaintiff alleges that, to take the job at the University of Utah, she moved across the country from Cleveland, Ohio, where she had been the director of the CNM and WHNP programs at her alma mater, Case Western Reserve University, to the University of Utah.

15.    Plaintiff alleges that she is Hispanic and not a member of The Church of Jesus Christ of Latter-day Saints.

16.    Plaintiff alleges she has been a full-scope CNM and WHNP since 2009.

17.    Plaintiff alleges she is also a fellow in the American College of Nurse Midwives ("ACNM").  She is also a senior site advisor for the American Commission on Midwifery Education ("ACME").  She alleges she recently wrote a CNM and WHNP exam review book for Springer Publishing, which further qualifies her to be a full professor.  She alleges she is an assistant editor for *Birth: Issues in Perinatal Care*.  She has received two awards from ACNM, one for innovation and

one for her global work.  She is bilingual and co-founded a non-profit organization, Madre y Nino, to support her work in Guatemala, which Defendant has heralded in its publications.  Since becoming employed by Defendant, Plaintiff has presented at numerous conferences and published in numerous peer-review journals.

18.   Plaintiff alleges that, on January 29, 2021, one week after she received a second Pfizer COVID-19 vaccination on January 21, 2021, which was required to maintain her job at the CON, she had a stroke.  Over the next several days, she sought treatment with various medical providers.  She alleges that, from February 7, 2021 until February 13, 2021, she spent a week in the critical care unit at the University of Utah Hospital.

19.   Plaintiff alleges that, after her stroke, she applied for and took FMLA leave for three months until June 2021.  Plaintiff alleges that, during this leave, she did extensive physical therapy, speech therapy, and occupational therapy to recover functionality.  She alleges she had to pass a re-driver's test to be able to continue driving.

20.   Plaintiff alleges that she has a disability in that she has had a stroke and still has several physical and cognitive deficits.

21.   Plaintiff alleges that, in June 2021, she returned to work, but was concerned that major cognitive deficits from her stroke would require accommodations

in order for her to perform the duties of her job.  She alleges her deficits included spatial disorientation, recall deficits, improper balance, the dexterity of her left hand being compromised and loss of her left side peripheral vision.  Such deficits affected her ability to process information quickly, to multitask, to remember and engage in high level executive functions on a constant basis.  Plaintiff alleges that it takes her longer to perform many tasks compared to how quickly she could perform tasks prior to her stroke.

22.     Plaintiff alleges that, when she returned to work in June 2021, she requested accommodations for five of the several deficits she was still experiencing from her stroke.

23.     Since returning to work in the undergraduate program, Plaintiff had been very well received and had received a glowing review from the Committee evaluating her performance in the undergraduate program post stroke.

24.     Plaintiff alleges that, due to her stroke, she does not pivot quickly, so unexpected duties that are not part of her workload and duties assigned to her at the last minute are challenging for her to complete.

25.     Plaintiff alleges that, on April 29, 2022, her physician, Dr. Amy Locke ("Dr. Locke"), who also happens to be the Director of Fitness, Wellness and Integrative Health for the University of Utah, submitted  requests for an

6

accommodation on Plaintiff's behalf to the CON.  Dr. Locke requested that the CON

refrain from requiring Plaintiff to perform any non-essential duties of her position and

from giving her and requiring her to perform such duties at the last minute.  Dr. Locke

explained that completing tasks takes Plaintiff longer to perform now due to her stroke

then before her stroke, and she stated Plaintiff would be more productive if the CON

afforded Plaintiff the accommodations she was recommending.  Plaintiff alleges that

Dr. Locke sent Human Resources an email warning the Defendant that she felt

Plaintiff's case had significant liability risk for Defendant.

      26.    Plaintiff alleges, of five deficits, the Defendant failed to address

four of the five deficits and failed to accommodate such deficits.  Accordingly,

Plaintiff alleges that, because of her disability, the University subjected her to

discrimination and retaliation.

      27.    Plaintiff alleges that, each semester, faculty are provided a list of

their workload and classes which they are expected to teach.  In summer 2022,

Plaintiff's workload included teaching maternal newborn, professional roles 2, and

scholarly project.  Simulation was not listed on her workload.  Plaintiff alleges that

other course leads, such as Denise Reeves ("Reeves"), and Cheryl Armstrong

("Armstrong"), will verify that, for the maternal newborn course, simulation is not part

of the workload for such class.

28.     Plaintiff alleges that Hofmann was new to the role of the Chair of the Division and did not understand the nature and responsibilities of the maternal newborn class.

29.     As an example of what Plaintiff was requesting as an accommodation and how the Defendant failed to accommodate her disability, Plaintiff alleges that she and Dr. Locke felt that she needed an accommodation because her supervisor, Dr. Linda Hofmann ("Hofmann"), expected Plaintiff to attend an undergraduate, maternal newborn simulation, which was not part of her normal workload, and was also assigning her last-minute duties, such as reviewing undergraduate applications.

30.     Plaintiff alleges Hofmann also repeatedly called Plaintiff on her personal cell phone during two different vacations Plaintiff was taking, despite Plaintiff leaving away email messages and documenting her departure in the recommended calendar.  This was in contradiction to the Dean encouraging faculty to use vacation to recover from the pandemic, not to mention that Plaintiff needing vacation to help her continue to recover from her stroke.  During one of those calls, Plaintiff was at the bedside of her father's best friend, who was like an uncle to her who was dying of prostate cancer.  Plaintiff also alleges that Hofmann calling her

personal cell phone was in contradiction to the practice of the CON, which was to communicate to faculty via email.

31.    Plaintiff alleges the process regarding her requests for accommodation was not interactive.  Plaintiff alleges that, on June 7, 2022, Defendant notified her that her request for accommodations had been denied.

32.    Thus, Plaintiff alleges that, on June 14, 2022, Annabel Reyes ("Reyes"), ADA Specialist for Human Resources Management at the University of Utah, advised her that the University was denying her request for accommodations.  In other words, the conversation was not a back and forth with an attempt to help an employee; instead, it was just a denial.  The only suggestion the University offered was to allow Plaintiff to use Dragon Speak to assist her with typing, which relates to only one of her multiple deficits.  Plaintiff alleges she wanted the opportunity to continue practicing typing in the hope of regaining functional of her left hand.  She alleges that Dragon Speak is difficult to learn, especially now that she had cognitive deficits.  Thus, Plaintiff alleges that learning to use the Dragon Speak software would have been labor-intensive for her.

33.    Plaintiff alleges that, despite her asking several times for a reason why the University was denying her request for accommodations, her management declined to provide a reason.

34.     Plaintiff alleges that, as a result of Human Resources denying her request for accommodations, her physical therapist at Neuroworx recommended that Plaintiff open a case with the Utah Department of Vocational Rehabilitation to see if it might be able to help Plaintiff.

35.     Plaintiff contacted the State Department of Vocational Rehabilitation, and after talking to Plaintiff's caseworker, Steven Phelps ("Phelps"), Phelps suggested requesting a meeting between himself, Plaintiff and Leann Robison ("Robison"), a state program specialist in the Department of Workforce Services, and with the University of Utah Human Resources to see if a better understanding of why Defendant was denying Plaintiff's requests for reasonable accommodation could be obtained.

36.     Plaintiff alleges that, more relevant to the current situation, Defendant listed four concerns about her work performance in the undergraduate program, two of which are related to hers request for accommodations.  She explains four of her concerns as follows:

(1)     The pre-licensure review was assigned to the plaintiff on a Wednesday, while she was in clinical for 10 hours at St. Mark's Hospital with students and leaving for Spring break the coming Friday.  Plaintiff intended to work on this project while on vacation.  Hofmann called her while she was on

vacation, and was on speakerphone with Plaintiff and Plaintiff's son and told

Plaintiff that Hofmann was excusing Plaintiff from having to do this duty.

Plaintiff alleges that excusing someone from having to do an assignment at the

last minute which they intended to do while on vacation and then later trying to

hold them accountable for not doing that assignment constitutes a failure to

accommodate.

(2)     As previously mentioned, simulation was not part of her

regular workload/duties.  Plaintiff did not attend the undergraduate (not the

graduate Birth Care Health Care) simulation on March 31, 2022 because she was

doing an ACME site visit as part of her job.  Meanwhile, one of her non-disabled

colleagues teaching maternal newborn and another one of her non-disabled

colleagues teaching professional roles repeatedly missed classes, which was part

of their workload.  Also, the first year she was assigned to maternal newborn,

she attended most of the lectures, even though this wasn't part of her workload,

and guest lectured several times, because she wanted to learn the structure of the

course.  Holding one faculty member accountable for a duty that is not part of

her workload while not holding other faculty members accountable for not

performing their essential duties is discriminatory.

(3)      Plaintiff alleges that she had as many students under her as any other faculty member in the maternal newborn class.

(4)      Plaintiff alleges that, after returning from her stroke, she taught in the scholarly project class for one semester.  All of her students passed their proposals, with one having to make a minor revision to his final mentor script, which is part of the process.  Furthermore, Plaintiff presented at the Western Institute of Nursing Conference with one of her students from this class, which is above and beyond what is expected from this class.

37.      Plaintiff alleges that, after the Defendant denied her requests for accommodation, Hofmann did meet with her several times for coaching sessions, in which she asked plaintiff to have peer reviews, which she did, which were glowing. She also received positive reviews from her students.

38.      After the meetings, Hofmann said Plaintiff had satisfied her requirements.  What's more, Hofmann recommended that plaintiff go up for promotion from associate to full faculty, spent an hour on the phone coaching her about this, and sent her documents to support her case.

39.      Plaintiff alleges Hofmann told her that if she did everything Hofmann asked her to do, she would not include any derogatory information her file, which was false.

12

40.     Plaintiff alleges that, on January 10, 2023, the CON Reappointment and Promotion Committee ("Committee") recommended Plaintiff for a reappointment/renewal of her contract of employment.

41.     Plaintiff alleges that, on February 1, 2023, she attended a Zoom meeting with Human Resources, Mike Brammer ("Brammer"), CON Employment Manager, and Reyes to again request accommodations and inquire why her prior request for accommodations were not being honored.  Neither Brammer nor Reyes offered any ideas regarding what support might be offered to accommodate Plaintiff's deficits.  Plaintiff to do anything asked of her at any time and that an accommodation request should be more along the lines of, if Plaintiff was given a non-essential duty or a duty at the last-minute, the Department would supply support to help her complete the task.

42.     Plaintiff alleges that, two weeks after this meeting, the University informed Plaintiff that it was not going to renew her contract of employment.

43.     Plaintiff alleges that, on February 22, 2023, she and her son, Emmett Kelly ("Kelly"), met with Lauren Brown ("Brown"), UUHR Analyst, to become fully and properly informed regarding FMLA leave.

44.     Plaintiff alleges that, in March 2023, due to the stress and mistreatment from the CON, at the urging of her family, she took another FMLA leave.

She alleges her family was concerned about her functionality decreasing due to not being accommodated.  Plaintiff alleges that Brown informed her that she would be paid until June 7, 2023.

45.     Plaintiff alleges that, later, on May 22, 2023, she received a paycheck for $300, instead of her regular paycheck of approximately $4,000, because Human Resources had decided to prorate her leave without informing her.  As a result of the low payment, she was unable to pay her mortgage, which caused unnecessary stress.

46.     Regarding the requirement to perform duties at the last-minute, Plaintiff acknowledges that the nature of her job is that other unexpected duties may arise in the course of a career.  She alleges the least the CON could have done to accommodate her request was to state that, if unexpected duties arose in the future, they would be assigned to other faculty who had not suffered a stroke after receiving vaccines that was required for their positions.

47.     Plaintiff alleges Hofmann's explanation of her decision not to renew her contract focused on minutia and ignored the big picture of the positive impact she had on undergraduate program, which further calls her explanation for not renewing Plaintiff's contract into question.  Plaintiff had received glowing review from the Committee.  Plaintiff alleges she had also procured about $45,000 in grants for

global health work.  For the grants, Plaintiff was the lead faculty collaborating with

three Ph.D.s and 30 undergraduate students, who were designing studies, analyzing

data, presenting at conferences, and publishing results from data collected in

Guatemala where Plaintiff maintained a program of study since 2009.

48.     Plaintiff alleges Hofmann ignored the Committee's

recommendation.

49.     Plaintiff alleges she was given no explanation as to why her

contract was not being renewed.

50.     As such, Plaintiff alleges all Hofmann's reasons (whatever they

were) are pretextual and form the basis for her claims of discrimination and retaliation

because Plaintiff had excellent performance reviews, and the Review Committee had

recommended her for reappointment.

51.     In any event, Plaintiff alleges that, on July 1, 2023, the University

officially notified her that it was not going to renew her contract of employment.

52.     Plaintiff alleges that Defendant did not renew the contract because

of her disability and her seeking accommodations for her disability.

53.     Plaintiff alleges that both the timing of the notification coming on

the heels of the second meeting for an accommodation, and the lack of information

15

about why her contract was not renewed when she was performing well, despite her stroke, support an inference of pretext.

54.     Plaintiff also alleges that the decision to not renew her contract was preceded by and succeeded by a series of procedural mistakes which underscores mismanagement on the part of Defendant, and, therefore, supports an inference of pretext.

55.     As such, Plaintiff alleges that she has been discriminated against based on her disability.

56.     Plaintiff also alleges that she has been subjected to retaliation and the acts of her employer are in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act, as amended.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO ACCOMMODATE UNDER THE REHABILITATION ACT

57.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 56 above as if alleged in full herein.

58.     Plaintiff alleges she was an employee with a disability and a qualified individual with a disability.

59.     Furthermore, on information and belief, Ms. Garcia alleges that, as the University of Utah maintains a contract of at least $10,000 with at least one federal entity, then the University is subject to the requirements of Section 504 of the Rehabilitation Act of 1973.

60.     Plaintiff alleges that, during her employment, she requested reasonable accommodations at various times and in various ways.

61.     The University of Utah failed to afford Plaintiff reasonable accommodations in a timely or complete manner.

62.     Plaintiff alleges that the University of Utah, through the actions of Plaintiff's supervisors, violated Title 42, Chapter 126, Subchapter 1, Sections 12112, subsections (a) and (b) (5) of the ADA and ADAAA by failing to make reasonable accommodations to the known impairments of Ms. Garcia, a qualified individual with a disability.

63.     Accordingly, Plaintiff alleges that the University of Utah has violated Section 11212 of the ADAAA, and Section 504 of the Rehabilitation Act of 1973, by failing to fulfill the requirement to make reasonable accommodations to the known physical or mental impairments of Ms. Garcia, a qualified individual with a disability, and would surely fail to prove that the affording of accommodations to

17

Plaintiff would have imposed an undue hardship on the operation of the business of such covered entity.

64.     Therefore, Plaintiff alleges the University of Utah is, therefore, liable for damages the fullest extent that pertinent laws allow.

## SECOND CAUSE OF ACTION
## DEFENDANT DISCRIMINATED AGAINST
## PLAINTIFF BECAUSE OF HER DISABILITY

65.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 64 above as if alleged in full herein.

66.     To state a prima facie case of discrimination based on disability, Plaintiff alleges facts which establish, or tend to establish, that: (1) she is disabled in that she has an impairment which is substantially limiting to a major life activity; (2) she was otherwise qualified in that she could perform the essential duties of the position she held or desired, with or without reasonable accommodation; (3) Defendant subjected her to an adverse action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination.  *See Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1142 (10th Cir. 2011); *accord Zwygart v. Bd. of Cnty Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

67.     As set forth above, Plaintiff alleges she is a person with a disability.

68.     As set forth above, Plaintiff alleges she was a qualified individual in that she was able to perform the essential duties of the position she held or desired, with or without an accommodation.

69.     Plaintiff allegations satisfy the first and second elements of her prima facie case.

70.     Plaintiff alleges that Defendant subjected her to adverse employment actions.

71.     Plaintiff alleges Defendant took various adverse employment actions against her.  An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, demotion, a reassignment with significantly different responsibilities, or a decision causing a significant change in benefits".  *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*).  Plaintiff alleges Defendant took adverse action against her on July 1, 2023, when it effectively terminated her employment.

72.     Plaintiff's allegations satisfy the third element of her prima facie case.

73.     Plaintiff alleges that the circumstances surrounding the adverse action give rise to an inference of discrimination.  Potential circumstances that support an inference of discrimination include, but are not limited to: (1) disparate treatment

which but for the employee's protected trait would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp,.* 400 U.S. 542, 544 (1971).

74.     Plaintiff alleges that Defendant treated other faculty members who did not have disabilities much differently and more favorably than how it treated Plaintiff.

75.     Plaintiff alleges that, as a side note, two other older faculty, who have had health issues and come from minority backgrounds, sent out emails in the spring of 2023, stating that they were planning on leaving the CON.  Plaintiff suspects that the Defendant had informed them that the Defendant was not going to renew their contracts.  Madeline Lassche ("Lassche"), a DNP, was former Executive Director of the Simulation Center, was Hispanic, was not a member of The Church of Jesus Christ of Latter-day Saints, and had cancer (she has since passed away).  Erin Meyer, Ph.D., former research associate at that CON, is Jewish, and has cardiovascular disease.

76.     Plaintiff alleges the University's failure to afford her reasonable accommodations also supports an inference that Defendant wrongfully terminated her employment because of her disability.

77.     Plaintiff's allegations satisfy the fourth element of her prima facie case.

78.     Plaintiff's allegations state a prima facie claim of discrimination on the basis of disability.

### THIRD CAUSE OF ACTION
### DEFENDANT RETALIATED AGAINST PLAINTIFF

79.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 78 above as if alleged in full herein.

80.     To state a prima facie case of retaliation, Plaintiff alleges facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected her to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N.  & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

81.     Plaintiff alleges she satisfies the first element in several ways.  For example, Plaintiff alleges that she requested a reasonable accommodation, which is a form of engaging in protected activity.  Plaintiff alleges that, after she returned to work from her stroke, she requested reasonable accommodation on several occasions and in

several ways.  *See Wehrley v. American.  Fam.  Mut Ins.  Co.,*513 F.App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,* 502 F.34 1176, 1194 (10th Cir. 2007)).

82.     Plaintiff's allegations satisfy the first element of her prima facie case.

83.     Plaintiff alleges that, after she engaged in protected activity, Defendant subjected her to adverse employment actions.  The Supreme Court has set forth the standard to be used in determining what constitutes an adverse employment action.  The Supreme Court explained that "materially adverse" means that the harm must be significant.  Specifically, the action must be materially adverse to a reasonable employee or applicant.  The determination must be made objectively, and thus must be measured against how a "reasonable person" would feel or act, in other words, an employee must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination".  However, the Supreme Court emphasized that whether any given act constituted retaliation may depend upon the particular circumstances.  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

84.     Plaintiff alleges that Defendant took adverse action against her on July 1, 2023, when it officially notified her that it was not renewing her contract of employment.

22

85.     Plaintiff's allegations satisfy the second element of her prima facie case.

86.     Plaintiff alleges a causal connection existed between the protected activity and the adverse action.  A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by an adverse action".  *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1258 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kansas Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)).  In the instant case, just a few weeks separated Plaintiff's latest requests for an accommodation and her termination.  This supports the inference that Defendant terminated Plaintiff's employment because of her requests for accommodation.

87.     Plaintiff's allegations satisfy the third element of her prima facie case.

88.     Plaintiff's allegations state a prima facie claim of unlawful retaliation.

## IV.  DAMAGES

89.     Ms. Garcia alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress, damages to her employability and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant and seeks the following relief:

1. A declaration and judgment determining that the Defendant violated applicable laws and is, therefore, liable to Ms. Garcia for damages equal to her lost wages, lost employment benefits, and other compensation which was denied or lost to Ms. Garcia as a result of the Defendant's violations of Title VII, and the Rehabilitation Act and damages for emotional distress;

2. For prejudgment interest;

3. For Ms. Garcia' reasonable attorneys' fees, and any other costs of the action;

4. For post-judgment interest on all amounts awarded to Ms. Garcia herein accruing from the date of judgment to the date of satisfaction of judgment awarded herein; and

5. For such other and further legal and equitable relief as this Court deems appropriate under the circumstances.

DATED this 5th day of September, 2024.


        */s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Kimberly S. Garcia, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.


_/s/ Kimberly S. Garcia_____
Kimberly S. Garcia


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of September, 2024.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

                             _____