IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KIMBERLY S. GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF UTAH,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>2:24-cv-00653-RJS-DAO<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendant University of Utah's Motion for Summary Judgment.[1]  For

the reasons explained below, the court GRANTS the Motion.

**BACKGROUND[2]**

Plaintiff Kimberly S. Garcia is a former employee of the University of Utah.[3]  The

University hired Garcia in 2019 as an assistant professor and Director of Midwifery with the

College of Nursing.[4]  Garcia struggled with the performance of her clinical responsibilities in the

role,[5] and was ultimately removed from practicing at the University.[6]  Garcia stopped serving as

---

[1] Dkt. 27, *Defendant's Motion for Summary Justice* (*Motion*).

[2] The facts are drawn from the parties' briefing and attached exhibits.  *See generally* Fed. R. Civ. P. 56(c).  On motions for summary judgment, the court "must construe the facts in a way most favorable to the nonmovant." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[3] Dkt. 1, *Complaint* ¶ 4.

[4] Dkt. 27-2 – *Deposition of Kimberly S. Garcia* (*Garcia Deposition*) at 7:5–7, 8:5–16.

[5] *See* Dkt. 27-4, *Memorandum of Expectations from Leissa Roberts, Associate Dean of Faculty Practice, and Abigail Rizk, Clinical Director of BCHC, to Kimberly Garcia, Associate Professor* (*March 27, 2020*).; Dkt. 27-5, *Memorandum of Expectations from Leissa Roberts, Associate Dean of Faculty Practice, and Abigail Rizk, Clinical Director of BCHC, to Kimberly Garcia, Associate Professor* (*July 22, 2020*).

[6] Dkt. 27-3, *Memorandum from Leissa Roberts*, *Associate Dean of Faculty Practice, and Abigail Rizk, Clinical Director of BCHC, to Marla De Jong, Dean of College of Nursing*.

the director of the midwifery and women's health program in November 2020, but continued teaching as a professor.[7]

Garcia suffered a stroke in January 2021, following which she took an immediate medical leave of absence.[8] As a result of her stroke, Garcia suffers from aphasia, proprioception deficits, vision loss, and difficulties with recall and balance.[9] Following approximately four months of medical leave, Garcia returned to teaching in May 2021.[10]

After returning from medical leave, Garcia continued to struggle with poor performance. Garcia's supervisor, Dr. Linda Hofmann received complaints from students and other professors regarding Garcia's teaching, communication, and preparedness.[11] Hofmann stated professors requested that Garcia not teach their students.[12] Hofmann met with Garcia to coach her on the concerns, with no improvement.[13] In March 2022, Hofmann reprimanded Garcia for failing to attend a teaching simulation she had volunteered to cover.[14] In April 2022, Garcia contacted the University's Americans with Disabilities Act (ADA) specialist, Anabel Reyes, and discussed her physical deficits and potential accommodations.[15] On April 20, 2022, Garcia submitted a request for accommodations:

> I would like time to continue going to OT & PT. I would also ask that colleagues understand I am cognitively atypical. Even though I appear normal, I still struggle with deficits. I have been told that I am supposed to be achieving excellence. I am not sure this is

---

[7] *Garcia Deposition.* at 7:5–17.

[8] *Id*. at 7:18–19, 15:21–25.

[9] *Id.* at 9:4–10:25.

[10] *Id.* at 16:17–17:17.

[11] Dkt. 27-11, *Declaration of Linda Hofmann in Lieu of Affidavit* (*Hofmann Declaration*) ¶ 6; Dkt. 27-12, UofU_000145-7.

[12] *Hofmann Declaration* ¶ 6.

[13] *Id.*

[14] Dkt. 27-14*, Email from Madeleine Lassche to Lauri Linder* (Mar. 31, 2022) (*Simulation Emails*) at 1–2.

[15] Dkt. 27-6, *Declaration of Anabel Reyes in Lieu of Affidavit* (*Reyes Declaration*) ¶¶ 4–5, 9–11.

realistic.  Holding me to an unrealistic threshold creates stress which further exacerbates my deficits.  I still have a lot of life, communication, global, and nursing experience to contribute to my college.  I can make my best contributions with patience, understanding, and support.[16]

On April 29, 2022, Garcia verbally modified her request to the following accommodations: (1) "[t]o not be assigned things that are not essential functions of her position;" (2) "[t]o limit last minute changes to schedule and tasks;" and (3) "[u]nderstanding that she is not going at the speed that everybody else is going but she can still do her functions."[17]  Reyes also discussed other possible accommodations.  Reyes suggested Garcia be granted use of a voice-dictation tool.[18]  However, Garcia declined the offer because she had difficulty learning the software and she wanted to continue typing to improve the functionality of her hand.[19]  Reyes also directed Garcia to a website to assist with identifying other possible accommodations.[20]  But Garcia struggled to navigate the website due to her processing deficit.[21]  Garcia did not notify Reyes about her difficulties with the website, nor did she ask Reyes for assistance with any additional online resources.[22]

On June 9, 2022, Reyes discussed Garcia's requests with Hofmann.[23]  Hofmann stated she did not believe Garcia had been assigned any functions that were not essential to her job.[24]

---

[16] *Id.* ¶ 4; Dkt. 27-8, *University of Utah Campus & Health Academics Employees Request for Reasonable Accommodation Form* (*Accommodation Request Form*).

[17] Dkt. 27-9, *E-mail from Anabel Reyes to Alex Pollack and Mike Brammer*, (Oct. 17, 2023) (*Reyes Email*).

[18] *Garcia Deposition* at 54:20–55:19.

[19] *Id.* at 60:12–19.

[20] *Id.* at 62:10–18.

[21] *Id.*

[22] *Reyes Declaration* ¶¶ 10–12.

[23]  Id.

[24] *Reyes Email* at 1 (reflecting that Garcia and Hofmann disagreed whether teaching simulations was a "marginal function");  Dkt. 27-10, *E-mail from Kimberly Garcia to Anabel Reyes*, (June 15, 2022).

Following Garcia's April requests, Hofman did not assign any last-minute or non-essential duties.[25]  Garcia did not request any further accommodations until February 2023.[26]

Despite performance concerns, Hofmann encouraged Garcia to seek a promotion in September 2022.[27]  Three weeks later, Hofmann told Garcia she did not want her to seek a promotion, but instead "wanted [her] to go up for reappointment."[28]  Hofmann did not provide an explanation for the change in her position.[29]

On February 1, 2023, Garcia again sought accommodations through the University's human resources department.[30]  However, neither Hofmann nor Marla De Jong— Dean of the College of Nursing's Office of Advancement and the undergraduate and graduate nursing programs—were informed of the renewed request for accommodation at that time.[31]  It is unclear when Hofmann and Dean De Jong were made aware of the renewed accommodations request, but it was not until after Garcia's contract was not renewed.[32]

During a routine reappointment review for faculty, the reviewing subcommittee recommended Garcia be reappointed and her teaching contract renewed.[33]  However, it was later determined the recommendation was an error because Garcia's position required a 5-year reappointment review, and Garcia—who started at the University in June 2019—was only

---

[25] *Garcia Deposition* at 61:25–62:9.

[26] *Reyes Email.*

[27] *Garcia Deposition* at 69:13–18.

[28] *Id* at 69:20–70:1.

[29] *Id*.at 69:20–72:2.

[30] *Reyes Email.*

[31] *Reyes Declaration* ¶ 8; *Hofmann Declaration* ¶¶ 14–15; Dkt. 27-13, *Declaration of Marla De Jong in Lieu of Affidavit* (*De Jong Declaration*) ¶¶ 8–9.

[32] *Id*.

[33] Dkt. 27-15, *Reappointment Recommendation* at 3.

approaching her four-year mark.[34]  The day before the full review board was scheduled to consider Garcia's reappointment, Hofmann and Dean De Jong discovered the timing error in Garcia's review and immediately halted the review process.[35]

On February 15, 2023, Hofmann and Dean De Jong notified Garcia that her appointment would not be renewed.[36]  Garcia went on medical leave again in March 2023 and did not return to work before her contract expired in June.[37]

On September 6, 2023, Garcia filed a discrimination complaint with the Utah Anti-Discrimination & Labor Commission and the U.S. Equal Employment Opportunity Commission asserting discrimination based on disability and retaliation.[38]

## PROCEDURAL HISTORY

On September 5, 2024, Garcia filed the instant action asserting three claims against the University for violation of the Rehabilitation Act of 1973 (Rehabilitation Act): (1) failure to accommodate a disability; (2) discrimination because of a disability; and (3) retaliation.[39]  On September 26, 2025, Defendant moved for summary judgment on all three claims.[40]  The Motion is fully briefed,[41] and the court received oral argument on March 24, 2026.[42]

---

[34] Dkt. 27-1, *Offer Letter* at 1.

[35] *Hofmann Declaration* ¶¶ 12-13; *De Jong Declaration* ¶¶ 14-15.

[36] Dkt. 27-19, *Letter from Linda C. Hofmann and Marla J. De Jong to Kimberly Garcia* (Feb. 15, 2023) (*Non-renewal Letter*).

[37] Dkt. 27-17, *Email from Lauren Brown to Kimberly Garcia* (Mar. 9, 2023) (*FMLA Request*) at 1; *Garcia Deposition* at 82:16–83:3.

[38] Dkt. 27-20, *Charge of Discrimination*.

[39] *Complaint* ¶¶ 57–88.

[40] *Motion*.

[41] *See Motion*; Dkt. 30, *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* (*Opposition*); Dkt. 36, *Defendant's Reply in Support of Motion for Summary Judgment* (*Reply*).

[42] Dkt. 38, *Minute Entry*.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[43]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[44]  A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[45] At summary judgment, the court does not  "weigh the evidence and determine the truth of the matter" but "determine[s] whether there is a genuine issue for trial."[46]  When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[47]  "However, unsupported conclusory allegations do not create a genuine issue of fact."[48]  To defeat a motion for summary judgment, an opposing party's evidence "must be based on more than mere speculation, conjecture, or surmise."[49]

When a party who will bear the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,] . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[50] Therefore, the movant who will not bear the burden of persuasion at trial may "make its prima

---

[43] Fed. R. Civ. P. 56(a).

[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[45] *Id.* at 248; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.") (citation omitted).

[46] *Id.* at 249.

[47] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

[48] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (citation modified).

[49] *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

[50] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[51]

ANALYSIS

Garcia asserts three claims under the Rehabilitation Act: failure to accommodate her disability, discrimination, and retaliation.[52]  The court analyzes each claim in turn.

## I.        Count I: Failure to Accommodate

Garcia first asserts a claim for failure to accommodate her disability.[53]  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[54]  Alleged violations of the Rehabilitation Act anti-discrimination provisions are reviewed under the same standard as Title I of the ADA.[55]  To establish a prima facie claim for a failure to accommodate under the Rehabilitation Act, Garcia must show "(1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) [the University] refused to accommodate her disability."[56]  For purposes of the Motion, the University concedes Garcia is disabled and otherwise qualified, but argues she did not request a plausibly reasonable accommodation and the University did not refuse to accommodate her disability.[57]

---

[51] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[52] *Complaint* ¶¶ 57–88.

[53] *Complaint* ¶¶ 57–64.

[54] 29 U.S.C. at § 794(a).

[55] *Id.* at § 794(d).

[56] *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).

[57] *Motion* at 17.

### A. *Garcia Requested Plausibly Reasonable Accommodations.*

The Rehabilitation Act requires an employer to "engage in an interactive process . . . to offer a reasonable accommodation to an otherwise qualified disabled employee." [58] "The term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of [her] job,"[59] and "[t]he interactive process is typically an essential component of the process by which a reasonable accommodation can be determined."[60] The University argues that it engaged in the interactive process to identify reasonable accommodations for Garcia and Garcia's requests were either already fulfilled or not actionable.[61] Garcia responds that the University either did not accommodate her or "declined to commit to make . . . an accommodation permanent going forward." The court concludes Garcia requested plausibly reasonable accommodations.

Garcia requested that she not be assigned any duties that were not essential functions of her position, that the University limit any last minute changes to her schedule or tasks, and that it "understand that she is not going at the speed that everybody else is going but she can still do her functions."[62] The University maintains Garcia was not being asked to perform any non-essential functions of her job at the time Garcia she made this request,[63] and Garcia "never proposed any actionable ways" for the University to "understand that she is not going to be at the speed that

---

[58] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999)).

[59] *Aubrey*, 975 F.3d at 1007 (citation modified).

[60] *Midland Brake, Inc.*, 180 F.3d at 1172.

[61] *Motion* at 18–19.

[62] *Reyes Email*.

[63] *Motion* at 18–19; *Hofmann Declaration* ¶¶ 10–11; *Garcia Deposition* at 56:22–57:7.

8

everybody else is going."[64]  Whether Garcia's requests were already being met or were later met does not address whether Garcia's requests were plausibly reasonable in the first instance.  The court concludes Garcia's requests to confine her responsibilities to only the essential duties of her position and limit last minute changes to her schedule or tasks are specific accommodations the University could make to enable Garcia to "perform the essential functions of [her] job."[65]

B. *There Is Insufficient Evidence to Show the University Failed to Accommodate Garcia.*

Although Garcia made reasonable accommodation requests, she has not presented evidence the University failed to accommodate her disability following her spring 2022 request. Garcia points to Hofmann's statement in response to her request that "she wasn't being assigned tasks outside of her job functions" to argue the University refused to accommodate her.[66] However, Garcia directly acknowledged the University did not assign any nonessential tasks or make any last-minute changes to her schedule following her 2022 request. [67]  While the parties dispute whether Garcia was being assigned nonessential tasks before the accommodations request, the fact that no further nonessential assignments were made following the request establishes that the University did not fail to meet its obligations under the Rehabilitation Act.[68]

In the absence of evidence showing Garcia was assigned last-minute and nonessential tasks following her request, Garcia instead argues the University violated the Rehabilitation Act's requirements because it did not provide adequate assurances that it would continue to

---

[64] *Motion* at 19, *Reyes Email*; *see also Accommodation Request Form* (requiring accommodation requests to be specific).  The University does not address Garcia's request to limit last-minute changes to her schedule and tasks other than to state Garcia concedes this request was accommodated. *See Motion* at 19.

[65] *Aubrey*, 975 F.3d at 1007.

[66] *Opposition* at 22.

[67] *Request Form*; *Garcia Deposition* at 54:15–17, 61:25–62:9.

[68] *Garcia Deposition* at 54:15–17, 61:25–62:9.

accommodate her going forward.[69]  Garcia asserts the University's failure to respond to her accommodation request with a written, permanent agreement "did not give Dr. Garcia any sense of comfort that the College would continue affording her this accommodation in the future."[70] However, this is not the standard for establishing a failure to accommodate claim under the Rehabilitation Act; the Act requires Garcia to show the University "refused to accommodate her disability,"[71] not a failure to provide written assurance that a requested accommodation will be permanent.

Finally, Garcia argues the University failed to accommodate her because it did not sufficiently engage in the interactive process in identifying additional accommodations.[72]  The undisputed facts show otherwise.  Garcia and Reyes did in fact communicate back and forth regarding additional accommodations, with Reyes offering recommendations including use of a dictation tool and the University's other online accessibility resources.[73]  The fact Garcia rejected the proposed resources (without expressing any concerns) does not show that the University failed to sufficiently engage in the interactive process.  Garcia fails to provide evidence of other plausible accommodations the University could have proposed but did not.[74] Accordingly, Garcia has failed to meet her burden showing the University refused to accommodate her disability, and the court GRANTS the University's Motion on the failure to accommodate claim.

---

[69] *Opposition* at 23.

[70] *Id.*

[71] *Aubrey*, 975 F.3d at 1005.

[72] *Opposition* at 21–22.

[73] *Garcia Deposition* at 51:1-19.

[74] *See Hirlston v. Costco Wholesale Corp.*, 81 F.4th 744,753 (7th Cir. 2023) ("Where the employer had failed to propose accommodations, the employee was entitled to oppose summary judgment by coming forward for the first time in the lawsuit with evidence of other available accommodations.").

## II.   Count II: Discrimination Based on Disability

Garcia's second claim is that the University discriminated against her because of her disability by not renewing her contract.[75]   A claim for discrimination under the Rehabilitation Act is reviewed under the *McDonnell Douglas* burden-shifting framework.[76]   Under this framework, "a plaintiff must first make a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a nondiscriminatory reason for its conduct.   The plaintiff then must show that the defendant's stated reason is merely pretextual."[77]   To make a prima facie case for discrimination, Garcia must show (1) she is "a disabled person under the statute," (2) she was "otherwise qualified for the job regardless of the disability," and (3) she was terminated because of the disability.[78]   Further, the Rehabilitation Act requires Garica show discrimination was the *sole reason* for which she was terminated.[79]   This is a significantly higher standard than for discrimination claims under the ADA, which require only a plaintiff's disability be a but-for cause of termination.[80]   When reviewing the University's decision to terminate Garcia, the court must "examine the facts as they appear to the person making the decision to terminate the plaintiff.   The court may not second guess the business judgment of the employer."[81]

---

[75] *Complaint* ¶¶ 65–78.

[76] *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005) (citing *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973)).

[77] *Id.* (citations omitted).

[78] *Id.*

[79] 29 U.S.C. § 794(a) (prohibiting discrimination against a qualified individual "solely by reason of his or her disability"); *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021).

[80] *Crane*, 15 F.4th at 1313 (10th Cir. 2021).

[81] *Dewitt v. Sw. Bell Tele. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quotation modified).

### A. *Prima Facie Discrimination*

The parties do not dispute the first two elements of the prima facie case that Garcia is a disabled person under the statute, and she was otherwise qualified for the associate professorship position regardless of her disability. [82]  However, the University argues Garcia cannot establish her contract was not renewed because of her disability.[83]  The court therefore confines its analysis to this prong.  To establish her employment was terminated because of her disability, Garcia's evidentiary burden is "not onerous;" only a "small amount of proof [is] necessary to create an inference of discrimination."[84]

Garcia argues the circumstances surrounding her nonrenewal support an inference that the adverse actions "were linked to her disability."[85]  Garcia was provided a recommendation for reappointment by the faculty review subcommittee that rated her as "Very Good in Teaching . . . Very Good in Practice . . . [and] Very Good to Excellent in Scholarship."[86]  But the day before the full reappointment committee was to vote on the recommendation, Hofmann and Dean De Jong halted the review and then days later opted not to renew her contract despite the subcommittee's recommendations.[87]  Taken together, these circumstances might create an inference of discrimination.

### B. *The University's Non-Discriminatory Reason for Nonrenewal.*

---

[82] *Motion* at 23.

[83] *Id.* at 22–23.

[84] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citation modified).

[85] *Opposition* at 24.

[86] Dkt. 30-2, *Reappointment Review Letter of Recommendation* at 2–3.

[87] *Hofmann Declaration* ¶¶ 5, 12–13; *De Jong Declaration* ¶¶ 4–5, 14–15.

The University responds that Garcia's contract was not renewed due to her history of poor performance, and Garcia concedes that "poor performance is a legitimate reason for an employer to fire an employee."[88]  The University provides substantial evidence to support poor performance as the basis for Garcia's nonrenewal.[89]  Both Hofmann and Dean De Jong state their decision not to renew Garcia's contract was due to concerns and negative feedback from other faculty and students regarding Garcia's teaching, Garcia's failure to attend the March 2022 simulation, and the increased burden Garcia's underperformance placed on the rest of the department.[90]  Hofmann also provided a summary of concerns about Garcia's performance raised by faculty and students, as well as notes from a coaching meeting held on April 4, 2022.[91]  The concerns include failure to meet commitments, poorer student test scores, failure to comply with University policies, and requests by other faculty that Garcia not teach their students.[92]  In her Opposition, Garcia denies that she ever received coaching or negative feedback.[93]  However,

---

[88] *Motion* at 23.

[89] Although Garcia disagrees with some of the statements made in the evidence presented, she has not objected to any of evidence provided by the University.  *See Hofmann Declaration* ¶¶ 6(g), 10–11 (stating Garcia's performance did not improve despite Hofmann's multiple efforts to coach her and Hofmann did not assign Garcia any tasks outside of the essential functions of her position); *Garcia Deposition* at 56:22–57:19 (stating Hofmann was giving Garcia unassigned and last-minute duties); *Opposition* at 6 (stating Hofmann was assigning Garcia non-essential or last minute tasks); *see generally Opposition* (not disputing any part of the record or supporting documentation filed by the University); *Docket* (reflecting no motions to strike or evidentiary objections pursuant to DUCivR 7-1(b)).  If a party fails to properly address another party's supported facts, the court may "consider the fact undisputed for purposes of the [summary judgment] motion." Fed. R. Civ. P. 56(e)(2); *Milam v. Pafford EMS*, 729 Fed. App'x 632, 636 (10th Cir. 2018) (concluding the district court did not abuse its discretion in considering supporting documentation as admitted when the opposing party failed to dispute it).

[90] *Hofmann Declaration* ¶ 6; *De Jong Declaration* ¶ 6.

[91] UofU_000145–7.  The document from Hofmann lacks a header including the date and sender/recipient information.  Federal Rule of Civil Procedure 56(c)(2) provides a party may object that the material cited "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  However, at summary judgment, a party "need not produce evidence in a form that would be admissible at trial . . . ." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).  Though Garcia disputes whether she was ever coached, she does not object to or otherwise challenge the authenticity of the document.  Nor does she cite evidence indicating the contents of the document are false. *See generally Opposition*.

[92] *Id.*

[93] *Opposition* at 27.

the deposition statements she cites in support concern only not being informed why her contract was not renewed, and do not concern whether she received coaching during her employment.[94] Further, the Complaint itself alleges Hofmann met "with [Garcia] several times for coaching sessions, in which [Hofmann] asked [Garcia] to have peer reviews."[95] Even if Garcia did not receive coaching, the University has provided ample documentation regarding Garcia's poor performance. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[96]

### C. Lack of Pretext

Garcia concedes that "poor performance is a legitimate reason for an employer to fire an employee." However, Garcia argues the University's stated reason of poor performance is pretextual. In determining whether the proffered reason for a decision was pretextual, the court must "examine the facts as they appear *to the person making the decision*; we do not look to the plaintiff's subjective evaluation of the situation."[97] "A plaintiff establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."[98]

Garcia argues the University's cited reason for nonrenewal is pretextual based on (1) the subcommittee's recommendation for reappointment, (2) the fact that Hofmann and Dean De

---

[94] *See Garcia Deposition* at 76:3–5, 92:22–24.

[95] *Complaint* ¶ 37.

[96] *Anderson*, 477 U.S. at 247–48 (emphasis in original).

[97] *C.R. England, Inc.*, 644 F.3d at 1044 (emphasis in original) (quotation marks and citations omitted).

[98] *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000) (quotation marks and citation omitted).

Jong halted the reappointment review process the day before the full committee vote, and (3) Hofmann encouraged Garcia to apply for a promotion and then retracted the suggestion.[99] Garcia also complains the University fails to name the specific faculty and students who made complaints about Garcia's performance.[100]

When viewed in the light most favorable to Garcia, the evidence does not support a finding of pretext.  The University provides detailed documentation of the specific content of the complaints against Garcia from faculty and students, as well as topics discussed during coaching.[101]  These issues are consistent with Hofmann and Dean De Jong's stated reasons for why they chose not to renew Garcia's contract.[102]  While the University does not provide the names of the students and faculty who filed complaints regarding Garcia, Garcia does not provide any legal authority showing this is required, nor has she disputed the substance of the complaints.[103]  Additionally, Garcia provides no evidence that the reappointment review board knew of any of these complaints when it made its recommendation for retention, while the University provided testimony that the review subcommittee did not have access to the information Hofmann and Dean De Jong ultimately relied upon in making their non-renewal decision.[104]

As for stopping the reappointment review process, Garcia does not dispute that the review was commenced in error before Garcia reached her 5-year employment mark.[105]  Garcia

---

[99] *Opposition* at 27.

[100] *Id.* at 26.

[101] UofU_000145–7.

[102] *See Hofmann Declaration* ¶ 6, *De Jong Declaration* ¶ 6.

[103] *See Opposition* at 23–28.

[104] *Hofmann Declaration* ¶ 13; *De Jong Declaration* ¶ 15.

[105] *Opposition* at 9.

cites no evidence that Hofmann and Dean De Jong interrupted the process upon learning of the mistake for any reason other than the review was done in error. Garcia's only evidence the review process was halted improperly is its suspicious timing—it was stopped the day before the full committee was set to vote on the reappointment recommendation—and that Garcia was not informed at the time why the review was stopped.[106] However, there is nothing in the record to suggest Hofmann and Dean De Jong intentionally waited until right before the full review to cancel the process. And both Hofmann and Dean De Jong's state they immediately halted the review only upon learning of the error.[107] "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that . . . the substantive reasons given by the employer for its employment decision were pretextual."[108] Nor does failing to explicitly inform Garcia at the time why the review was stopped indicate it was stopped for a reason different than the one stated.

The record also does not support the conclusion that Hofmann retracted her promotion suggestion to Garcia on account of Garcia's disability. Hofmann was informed of Garcia's disability and accommodations request in May of 2022,[109] and Hofmann made her promotion recommendation in September 2022, four months later.[110] Knowledge of a disability alone, "without more, is insufficient to create a triable fact as to pretext."[111] Further, if Hofmann were to have discriminated against Garcia due to her known disability, it is unlikely she would have made the suggestion in the first place. Under these circumstances, a reasonable jury could not

---

[106] *Opposition* at 27–28.

[107] *Hofmann Declaration* ¶¶ 12-13; *De Jong Declaration* ¶¶ 14-15.

[108] *Berry v. T-Mobil USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (quotation marks and citation omitted).

[109] *Hofmann Declaration* ¶ 8.

[110] *Garcia Deposition* at 70:19–72:2.

[111] *Sellman v. Aviation Training Consulting, LLC,* 155 F.4th 1215,1221 (10th Cir. 2025) (citations omitted).

find that Hofmann's actions regarding the promotion suggestion were due to Garcia's disability and thus evidence that the University's stated reasons for nonrenewal were pretextual.[112]

Lastly, it is undisputed that Garcia failed to attend the simulation in March 2022 for which Garcia was reprimanded.[113]  The University cites the missed simulation as a reason for Garcia's non-renewal.[114]  Garcia does not attempt to explain why the University did not in fact view the missed simulation as a reason for her non-renewal.[115]

The record demonstrates that Garcia had a history of poor performance.  Because Garcia does not provide any evidence showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the University's stated reason for not renewing her contract, a reasonable jury could not find that the University's stated reasons were pretextual and Garcia was terminated solely due to her disability.  Therefore, the court GRANTS the Motion as to count II.

### III.    Count III: Retaliation

Garcia's final claim is that the University violated the Rehabilitation Act by retaliating against her in declining to renew her contract.[116]  Retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting framework.[117]  To establish a prima facie case for

---

[112] At oral argument , Garcia's counsel claimed Hofmann provided Garcia a positive performance evaluation in August 2022 which stated, "Garcia is a valued contributor."  However, the performance review was not provided or discussed in their Opposition Response brief, and it is unclear if the University had notice of the evidence beforehand.  The court "will not consider issues initially raised at oral argument [;] . . . raising an issue for the first time at oral argument affords the opposing party an inadequate opportunity to address it." *Cannon v. Trammell*, 796 F.3d 1256, 1267 (10th Circuit 2015) (citation modified).  Accordingly, the court will not consider the performance evaluation as evidence of pretext.

[113] *Simulation Emails*.

[114] *Motion* at 24.

[115] *See generally Opposition*.

[116] *Complaint* ¶¶ 79–88.

[117] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

retaliation, Garcia must show (1) "she engaged in a protected activity;" (2) "she was subjected to adverse employment actions subsequent to or contemporaneous with the protected activity;" and (3) "a causal connection between the protected activity and the adverse employment action."[118] If Garcia establishes a prima facie case, the burden shifts to the University to provide a legitimate reason for the adverse action, before shifting back to the Garcia to show pretext.[119] As a prerequisite for showing a causal connection, a plaintiff "must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire [her] had knowledge of [her] protected activity."[120] A causal retaliatory motive "may be inferred when an adverse action closely follows protected activity. However, unless an adverse action is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[121] Courts have found that a one-and-a-half-month period is sufficient to draw an inference of retaliation,[122] while a three-month period is not.[123] Additionally, as with discrimination, the Rehabilitation Act requires that the retaliation be the *sole* cause of the defendant's adverse action.[124]

Here, the parties agree Garcia engaged in a protected activity by seeking accommodations, and she was subjected to adverse employment action when the University did

---

[118] *Id.* (citation omitted).

[119] *Id.*

[120] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

[121] *Anderson*, 181 F.3d at 1179 (emphasis and citations omitted).

[122] *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994).

[123] *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

[124] *Crane*, 15 F.4th at 1313.

not renew her contract.[125]  However, the parties dispute whether any causal connection exists between the protected conduct and the adverse employment actions.[126]

Though Garcia maintains she provides more evidence of retaliation than temporal proximity between her requests for accommodations and her non-renewal (specifically, the non-renewal itself and the abrupt stop of the reappointment review),[127] the record does not support this contention.  Garcia does not point to any conduct or remarks made by Hofmann or Dean De Jong between her request for accommodations and her nonrenewal indicating hostility toward her on account of her request for accommodations, nor does she state she was treated differently than other employees who sought accommodations.[128]  The only negative events Garcia alleges in the months following the 2022 accommodations request are Hofmann's retraction of her suggestion Garcia seek a promotion and the decision to halt the erroneous reappointment review process.[129]  For the same reasons discussed above,[130] the evidence is insufficient to show either event was motivated by improper discriminatory motives, including retaliation.

Garcia made her initial request for accommodations between April and June 2022.[131]  Garcia again initiated a request for accommodations in February 2023.[132]  However, there is no

---

[125] *Motion* at 29.

[126] *Id.*

[127] *Opposition* at 30.

[128] *See generally Garcia Deposition*; *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3rd Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee . . . or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole.") (citations omitted)).  Garcia does not mention any other employees who sought accommodations, but she does say she was not treated differently than other employees because of her disability.  *Garcia Deposition* at 66:25–68:14.

[129] *See generally Complaint*; *Garcia Deposition* at 69:13–70:1, 101:7–02:11.

[130] *See supra* at 16–17.

[131] *Garcia Deposition* at 53:10–14.

[132] *Reyes Email* at 2.

evidence in the record that Hofmann and Dean De Jong—the two University employees involved in the contract renewal decision—knew of the second accommodations request at the time of her non-renewal in February 2023.[133]  Hofmann and Dean De Jong deny learning of the second accommodations request until after the non-renewal decision was made.[134]  The adverse employment decision was over eight months after Hofmann and Dean De Jong learned of Garcia's initial request in 2022.  Without more, eight months is not sufficiently close in time to establish a causal connection between Garcia's disability and nonrenewal.[135]  Absent any other evidence, a reasonable jury could not conclude the decision against renewal issued months later constituted retaliation for Garcia's request for accommodations.  Accordingly, the court GRANTS the Motion as to count III.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Justice is GRANTED.[136]  The Clerk of Court is directed to close the case.

SO ORDERED this 14th day of May, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[133] *Hofmann Declaration* ¶¶ 14–15; *De Jong Declaration* ¶¶ 9–10; *Reyes Declaration* ¶ 8.

[134] *Hofmann Declaration* ¶¶ 14–15; *De Jong Declaration* ¶¶ 9–10.

[135] *See Richmond*, 120 F.3d at 209 (a three-month gap between the protected activity and adverse action alone is not enough to establish causation).

[136] Dkt. 27.